# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JOHN MAGUIRE, | : | |
| Plaintiff, | : | Case No. 3:07CV0178 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| SOCIAL SECURITY ADMINISTRATION, *et al.*, | : | |
| | : | |
| Defendants. | | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff John Maguire, a resident of Dayton, Ohio, brings this case *pro se* against the Social Security Administration, Jeri Wenzel, Chance Melvin, and unnamed "Does 1-100." (Doc. #2 at 1).

At the outset of this case Plaintiff was granted leave to proceed *in forma pauperis* and the Court reviewed the Complaint *sua sponte* as required by 28 U.S.C. §1915, concluding, "while some of Plaintiff's claim are plainly without merit, this case may proceed at least to the extent he seeks to recover unpaid Social Security benefits previously awarded him by the Social Security Administration." (Doc. #4). The Court later substituted the Social Security

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Administration and the United States of America (the Government) in place of Defendants Jeri Wenzel and Chance Melvin, who, in light of matters challenged by the Complaint, acted withing the scope of their employment as federal employees.  (Doc. #s 12, 13).

The case is presently before the Court upon Defendant's Rule 12(b)(1) Motion To Dismiss (Doc. #14), Plaintiff's Response And Opposition To Defendant's Motion To Dismiss The Complaint (Doc. #16), Defendant's Reply (Doc. #19), Plaintiff's Summary Of Objections To Defendant's Motion To Dismiss (Doc. 20), and the record as a whole.

## II. PLAINTIFF'S COMPLAINT

The Complaint first explains, "The Plaintiff's action is against the Social Security Administration and their Office of the Inspector General....  The Plaintiff alleges that the Defendants improperly withheld Social Security benefits that were due and payable to him.  The Plaintiff claims that ... Defendants Jeri Wenzel and Chance Melvin engaged in conduct that was so harmful to the Plaintiff that it caused him to lose his home, personal property and to be wrongfully evicted.  Wenzel and Melvin are employees of the United States...."  (Doc. #2 at 1).

Plaintiff's First Cause of Action is captioned, "IMPROPER DENIAL OF SOCIAL SECURITY BENEFITS."  (Doc. #2 at 2).  He alleges that on April 24, 2003 the SSA granted his application for Supplemental Security Income and determined that he was owed "$26,998 in back benefits" to be paid to him in three installments.  (Doc. #2 at 2).  Although he received his first installment, a payment of $6,624, the Social Security Administration never sent him the remaining two installments, totaling unpaid back benefits in the amount

of $20,374.

Plaintiff alleges that the Social Security Administration failed to pay Plaintiff these installments because a disgruntled relative falsely reported to the Social Security Administration that Plaintiff had committed social security fraud.  Upon this report, Defendant Melvin began to investigate Plaintiff.  But, according to Plaintiff, he "has never been charged or convicted related to the false accusation.  During the same time period, [he] was also being investigated by the FBI due to the same conspiracy to falsely accuse [him]." (Doc. #2 at 3).

Plaintiff alleges that in approximately October 2003, Jeri Wenzel and Chance Melvin caused his social security benefits to be cancelled, including the two unpaid installments of back benefits.  Plaintiff alleges that he received no notice or hearing regarding these matters, although he made numerous attempts to appeal.  These attempts "were not properly processed and appear to have been ignored."  (Doc. #2 at 3).

Plaintiff's Second Cause of Action is captioned, "LOSS OF REAL PROPERTY." (Doc. #2 at 4).  He alleges that during 2003 he and a bank had entered a valid written contract for the purchase of the home in which he was living.  Plaintiff asserts that in October 2003, Wenzel and Melvin reported the FBI's investigation to the bank thus causing the bank "extreme alarm" and leading it to cancel the contract with Plaintiff.  *Id*. at 5. Plaintiff explains that he repeatedly contacted the bank for more than four months in an unsuccessful campaign to close his real estate purchase, but the bank failed to respond to his inquiries and requests.  Someone else eventually bought the home, and causing Plaintiff a

3

loss amounting to $104,500.  *Id*. at 4-6.

Plaintiff's Third Cause of Action is captioned, "LOSS OF PERSONAL PROPERTY."  *Id*. at 7.  This claim arises because Plaintiff was incarcerated on charges unrelated to his social security problems.  During his incarceration, his home was sold and his personal property was stolen or removed from the home without his authorization.  Plaintiff claims that Defendants thus caused him to lose all his clothing, furniture, electronics, and other household items.  *Id*. at 7.  Plaintiff states in his Fourth Cause of Action that these events also caused his wrongful eviction from his home without any court process.  *Id*.

## III.   THE GOVERNMENT'S MOTION AND PLAINTIFF'S RESPONSE

The Government's recitation of certain historical facts is consistent with Plaintiff's factual allegations.  Consequently, there is no dispute over the following:

> In the summer of 1999, Mr. Maguire applied for Supplemental Income Security a program administered by the Social Security Administration. Initially, he was denied these benefits but appealed the denial through the system to an administrative law judge.  On March 26, 2003, Administrative Judge Redmond found Mr. Maguire eligible for supplemental income benefits as of his initial date of application..... Plaintiff was determined to have almost $27,000 in back benefits payable to him.  The rules prohibit such a large payment in a lump sum.  Therefore, he received a check for $6,624 in April of 2003 and was still owed the balance of over $20,000....

(Doc. #14 at 2)(citations omitted).

The Government contends that Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  The Government reasons that Plaintiff failed to exhaust his administrative remedies with respect to his claim for the

4

unpaid social security installments and has not received a "final decision" from the Commissioner of the Social Security Administration necessary to support this Court's exercise of subject matter jurisdiction under 42 U.S.C. 405(g).

To support its assertion that Plaintiff did not exhaust his administrative remedies, the Government relies on the Declaration of Ernest Baskerville, who is the "Chief of Court Case Preparation and Review Branch 3 of the Office of Appellate Operations, Office of Disability Adjudication and Review, Social Security Administration." (Doc. #14, Exhibit A at 1). Baskerville declares in part:

> I am responsible for the processing of claims under Title XVI of the Social Security Act, as amended, whenever a civil action has been filed in the State of Ohio. The actual paper case relating to the claim of the plaintiff, JOHN H. MAGUIRE, under Title XVI of the Social Security Act, is presently unavailable. However, some of the documents pertinent herein were copied to the Social Security Administration's Electronic Folder Process. Information available to me from the electronic folder and the electronic computer control system maintained by the Officer of Adjudication and Review discloses the following:
>
> (a) An Administrative Law Judge issued a hearing decision on March 26, 2003 finding, based on application for supplemental security income dated July 8, 1999, the claimant has been disabled since July 8, 1999....
>
> (b) On October 7, 2003, plaintiff's disability benefits were suspended pending investigation of unreported resource [sic].... The electronic record shows that plaintiff did not respond to notices concerning the matter of suspension and overpayment, and that plaintiff did not file an appeal....

(Doc. #14, Exh. A at ¶3)(citations omitted).

The Government also relies on the Declaration of Jeri Wenzel, who was an

5

Operations Supervisor for the Social Security Administration in Dayton, Ohio.  (Doc. #14, Exh. C at ¶1).  Wenzel states that after Plaintiff received his first of three payments for back benefits, and a few months of regular supplemental security income benefits, he sought a lump-sum payment of the remaining 20,000 in back benefits because he wanted to buy a home.  (Doc. #14, Exh. C-1).  To support his request for lump-sum payment, Plaintiff submitted to the Social Security Administration an "Agreement to Purchase."  (Doc. #14, Exh. C at ¶4).  According to Wenzel, the purchase method for the home was unusual.  *Id.*  A letter was therefore sent to Plaintiff stating in part:

> Your first installment payment was released to you on April 10, 2003.  At that time, you made no mention of a current or anticipated home purchase.  Because the purchase of a home was not an outstanding debt or a current or anticipated expense at the time of first installment payment, we cannot currently allow release of the $20,000 you are requesting.  Your next installment payment will be paid to you as scheduled in October 2003.

(Doc. #14, Exh. C-1 at 1-2).  The letter explained that Plaintiff had the right to appeal as follows:

> If you disagree with the decision, you have the right to appeal.  We will review your case again and consider any new facts you have.  A person who did not make the first decision will decide your case.

*Id*. at 2.  The letter also informed Plaintiff that he had "60 days to ask for an appeal." *Id*.  And the letter stated, "You have to ask for an appeal in writing.  We will ask you to sign a form SSA-562-U2, called 'Request for Reconsideration.'  Contact one of our offices if you want help."  *Id*.

Wenzel further states in her Declaration that she learned of "possible self-

6

employment activities and resources belonging to Mr. Maguire that he did not disclose during the earlier pre-effectuation review conducted to determine his eligibility for payment." (Doc. #14, Exh. C at ¶6). Wenzel explains:

> As such, and in the ordinary course and scope of my employment as an SSI Operations Supervisor, I suspended Mr. Maguire's benefits after my attempts to have him explain these issues failed. He was duly notified of the type of resources in question and sent releases of information forms to sign to help us in our investigation, i.e. requesting bank records. He was also sent a form in which he could explain and clarify his self-employment activity....
>
> Because Mr. Maguire did not return the form, we were unable to discuss his self-employment or undisclosed resources with him....

*Id*. at ¶s 6-7. Wenzel lastly notes, "Because fugitive felons are not entitled to benefits, 42 U.S.C. §1382(e)(4)(A), I added remarks to his most current record regarding his arrest warrant and fugitive felon status." *Id*. at ¶7. The Government notes in its Reply that Plaintiff "was incarcerated after the initial payment and before the subsequent payments." (Doc. #19 at 3).

The Government also sent Plaintiff a Notice in October 2003 informing him that the Social Security Administration had determined he was no longer eligible to receive Supplemental Security Income beginning in, and continuing after, March 2003. (Doc. #19, Notice attached). The Notice explained he was not eligible because he had "net income from self-employment of $1,250.00 for March 2003 on." *Id*. The Notice informed Plaintiff that he had the right to appeal the decision, that he must do so within 60 days, and that in order to effect an appeal he "must fill out a form called 'Request for Reconsideration.' The form is SSA-561...." *Id*. at 3.

In May 2004, the Government sent Plaintiff a Notice stating that he was not eligible for past benefits during the period of May 1, 2000 through September 30, 2000 because he had "resources worth more than $2,000.00." (Doc. #19, Notice attached). The Notice informed Plaintiff that he had the right to appeal the decision and that a person who had not seen his case – an Administrative Law Judge – would review his appeal. The Notice also informed Plaintiff that he must ask for an appeal in writing within 60 days, and that he would be asked to "to sign an SSA form HA-501, called 'Request for Hearing.'..." *Id*. at 2.

In July 2004, the Government sent a Notice to Plaintiff stating that the Social Security Administration had overpaid him $3,784.00 in Supplemental Security Income. This overpayment had occurred "due to unexplained excess resources.... A full accounting and explanation of resources has not been submitted. " (Doc. #19, Notice attached). The Notice informed Plaintiff of his right to appeal the decision, that he had 60 days to ask for an appeal, and that in order to effect an appeal he would need to "fill out a form called 'Request for Reconsideration.' The form is SSA-561...." *Id*. at 2.

In opposition to the Government's Motion to Dismiss, Plaintiff "emphatically denies" that he failed to exhaust his administrative remedies and he contends that the Government "has refused to afford him the right to appeal and has ignored his many attempts to appeal in these regards." (Doc. #16 at 1). To demonstrate that he attempted to appeal the decision to suspend the payment of benefits, Plaintiff submits copies of letters dated October 16, 2003, November 23, 2003, December 11, 2003, December 31, 2003 and June 7, 2004. (Doc. #16, letters attached). The November 23, 2003 letter is representative of the others and states:

8

> This is my second request to appeal the decision to deny my past and future benefits. I request confirmation of my notice of appeal. The claim that I earned 1250 dollars in 2001 does not justify this drastic action nor does the political witch hunt which has led to my incarceration. I am not charged with any crime related to my receipt of benefits. I request benefit payment pending appeal and I further request prompt payment of past benefits which are owed to me at this time....

(Doc. #16, letter attached).

**IV.    RULE 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits dismissal of a Complaint due to the lack of subject matter jurisdiction. "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction. When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)(citing *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004)).

**V.    ANALYSIS**

The district court has subject matter jurisdiction over a "final decision" of the Commissioner.[2]  *See* 42 U.S.C. §405(g); *see also McClanahan v. Commissioner of Social*

---

[2] 42 U.S.C. §405(g) provides in part:
> Any individual, after any final decision of the Commissioner of the Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

9

*Security*, 474 F.3d 830, 832-33 (6th Cir. 2006). The phrase "final decision" is not defined by the Social Security Act ("the Act"). *Willis v. Sullivan*, 931 F.2d 390, 397 (6th Cir. 1991). "[T]he Secretary [now, the Commissioner] is authorized to define a 'final decision' in whatever fashion deemed necessary for the efficient and effective administration of the Act." *Id*.

To obtain a final decision from the Commissioner, a social security claimant proceeds through several stages of an administrative appeals process. The United States Court of Appeals has described the administrative appeals process as follows:

> The Secretary and Congress have established an 'unusually protective' four step process to facilitate the orderly and sympathetic administration of disputed claims..., which culminates in a final decision of the Secretary subject to judicial review.... First, a claimant is entitled to an initial determination of disability.... Secondly, if dissatisfied, the claimant may request a *de novo* reconsideration of that determination... Third, if still dissatisfied, the claimant is entitled to an evidentiary hearing and a *de novo* review before an ALJ.... Fourth, the claimant may take an appeal to the Appeals Council.... The claimant may then seek judicial review in federal district court.... Thus, for purposes of the finality requirement of § 405(g), a claim becomes final after the Appeals Council renders its decision.

*Willis v. Sullivan*, 931 F.2d 390, 397 (6th Cir. 1991) (footnotes and citations omitted); *see Nicholson v. Commissioner of Soc. Sec.*, 83 Fed. Appx. 785, 786 (6th Cir. 2003).

In the present case, in March 2003 Plaintiff received a favorable hearing decision awarding him unpaid back benefits. But, in October 2003 the Social Security Administration (through Wenzel) suspended payment of those benefits pending investigation of unreported resources. The Social Security Administrative notified Plaintiff about the suspension, informed him about his appeal rights, and provided him with specific

information about the form he needed to complete to implement an appeal. *See Supra*, §III. Plaintiff was also told to contact one of the Social Security Administration's offices for help, if he needed it. *Id*.

Accepting Plaintiff's allegations as true, and viewing as authentic the letters he has submitted, the most that can be said in his favor is that although he attempt to appeal the suspension of his unpaid back benefits by writing letters, no genuine dispute exists in the record that he did not complete the required appeal form(s), about which he had actual notice. The record also lacks evidence indicating that Plaintiff provided the Social Security Administration with the further information and explanation Wenzel sought about Plaintiff's self-employment activities. Similarly, when the Social Security Administration later (in May 2004) informed him that he was not eligible to receive his unpaid back benefits (from the period May 1, 2000 through September 30, 2000) because he had "resources worth more than $2,0000.00," he was also informed him about his right to appeal and about the need for him to complete a specific form to challenge this decision on appeal. *Supra*, §III. Although Plaintiff "emphatically denies" the Government's contention that he failed to pursue administrative appeals, his letters alone do not establish that he completed the correct form or otherwise perfected a timely administrative appeal using the procedures outlined to him by the Social Administration. Because Plaintiff did not pursue an administrative appeal of the decisions suspending and terminating his unpaid back benefits, he did not obtain a "final decision" by the Commissioner over which this Court could exercise subject matter jurisdiction under 42 U.S.C. §405(g). And, each of Plaintiff's causes of action asserted in

11

his Complaint hinge on the validity of the Commissioner's decision to suspend and ultimately terminate his unpaid back benefits. As a result, Plaintiff's Complaint does not raise a claim over which the Court has subject matter jurisdiction under 42 U.S.C. §405(g).

### IT IS THEREFORE RECOMMENDED THAT:

1. The Government's Rule 12(b)(1) Motion To Dismiss (Doc. #14) be GRANTED;

2. Plaintiff's Complaint be DISMISSED;

3. The Court certify pursuant to 28 U.S.C. §1915(a) that for the foregoing reasons an appeal of a Decision adopting this Report and Recommendations would not be taken in good faith and therefore deny Plaintiff leave to appeal *in forma pauperis*. If so certified, Plaintiff, a non-prisoner, would remain free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999); and

4. This case be terminated on the docket of this Court.

September 26, 2008

   s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).